State of Nebraska, appellee, v.
Kena G. Jackson, appellant.

___ N.W.2d ___

Filed October 2, 2015.    No. S-14-677.

1. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
4. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken.
5. **Criminal Law: Final Orders: Sentences: Words and Phrases.** The final judgment in a criminal case means sentence, and the sentence is the judgment.
6. **Final Orders: Appeal and Error.** The general rule prohibiting immediate appeals from interlocutory orders seeks to avoid piecemeal appeals arising out of one set of operative facts, chaos in trial procedure, and a succession of appeals in the same case to secure advisory opinion to govern further actions of the trial court.
7. **Judgments.** As a general matter, an order on summary application in an action after judgment under Neb. Rev. Stat. § 25-1902 (Reissue 2008) is an order ruling on a postjudgment motion in an action.
8. **Words and Phrases.** A substantial right is an essential legal right, not merely a technical right.
9. **Final Orders: Appeal and Error.** An order affects a substantial right if it affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing.

10. **Final Orders.** Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.
11. **Final Orders: Appeal and Error.** An order affects a substantial right when the right would be "significantly undermined" or "irrevocably lost" by postponing appellate review.
12. **Habeas Corpus.** The certified copy of the judgment of a court of record constitutes the authority of the warden to retain the prisoner.
13. **Arrests: Warrants: Appeal and Error.** An order for an arrest and commitment warrant is not a final, appealable order.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Appeal dismissed.

Jerry L. Soucie for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MCCORMACK, J.

## NATURE OF CASE

A parolee appeals from the district court's arrest and commitment warrant that was issued ex parte after the Nebraska Department of Correctional Services (the Department) alerted the court that it had erroneously discharged him before his mandatory release date. The parolee attacks the subject matter jurisdiction of the district court to issue the order for an arrest and commitment warrant. Alternatively, the parolee asserts that the lack of notice and a hearing violated procedural due process and his right to counsel. We dismiss the appeal for lack of a final, appealable order.

## BACKGROUND

Kena G. Jackson was convicted of possession of a controlled substance with enhancement pursuant to the habitual

criminal statute.[1] On June 9, 2004, Jackson was sentenced by the district court to 10 to 15 years' imprisonment, with 196 days credit for time served.

The Department erroneously discharged Jackson from custody on November 11, 2013. With the 196 days' credit, Jackson had served only 3,650 days at the time of his discharge. This would correspond to his 10-year mandatory minimum sentence under the habitual criminal statutes. However, Jackson's discharge date should have been calculated upon serving 12½ years of his sentence.[2] Jackson's parole eligibility date was calculated upon serving 10 years of his sentence.[3]

On June 26, 2014, the State filed a motion in the district court, under the same docket number as the original conviction and sentence, asking that the court issue a warrant for Jackson's arrest and commitment, so that he could serve the remainder of the June 9, 2004, sentence. The State filed an accompanying affidavit in which the director of the Department averred that by deducting good time credit from Jackson's mandatory minimum sentence, the Department had erroneously released Jackson before his mandatory discharge date. Thus, at the time Jackson was erroneously released, he still had 2 years 6 months to serve on his sentence before mandatory discharge. Jackson was not notified of the State's motion, and no hearing was held on the motion.

The court issued an order on June 26, 2014, finding that Jackson had not served the entirety of his sentence and that he had been prematurely and erroneously released. The court ordered that an arrest and commitment warrant be issued. The court concurrently issued the arrest and commitment warrant. Upon his return to custody, the Department released Jackson on parole. The Department has indicated that other similarly

---

[1] See Neb. Rev. Stat. § 29-2221 (Reissue 1995).

[2] See Neb. Rev. Stat. §§ 83-1,107 and 83-1,110 (Reissue 2014). See, also, e.g., *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013), *disapproved on other grounds, State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015).

[3] See *id*.

released inmates have not always been brought back into custody through an arrest and commitment warrant.

Jackson appeals the court's order for an arrest and commitment warrant.

## ASSIGNMENTS OF ERROR

Jackson asserts (1) that the district court lacked subject matter jurisdiction to order his arrest and commitment and (2) that issuing the arrest and commitment warrant without notice or a hearing was "in violation of the Due Process Clause of the Fourteenth Amendment and Sixth Amendment to the United States Constitution."

## STANDARD OF REVIEW

[1,2] A jurisdictional issue that does not involve a factual dispute presents a question of law.[4] We independently review questions of law decided by a lower court.[5]

## ANALYSIS

[3,4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[6] For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken.[7]

[5] The "final judgment in a criminal case means sentence and the sentence is the judgment."[8] Accordingly, the order for an arrest and commitment warrant in this case occurred after the final judgment. It could only be directly appealed if it constituted a final order.

---

[4] *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

[5] *Id.*

[6] *Id.*; *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006).

[7] *Id.*

[8] *State v. Adamson*, 194 Neb. 592, 593, 233 N.W.2d 925, 926 (1975).

There are three types of final orders that may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 2008): (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. In addition, the collateral order doctrine provides that an interlocutory order is immediately appealable if it (1) finally decides an important matter, (2) that is separate and distinct from the merits, and (3) is effectively unreviewable at the end of the litigation.[9]

[6] These are the limited exceptions to the general rule that interlocutory orders are not immediately appealable. The general rule prohibiting immediate appeals from interlocutory orders seeks to avoid piecemeal appeals arising out of one set of operative facts, chaos in trial procedure, and a succession of appeals in the same case to secure advisory opinion to govern further actions of the trial court.[10]

Jackson asserts that the order for an arrest and commitment warrant was final, because it affected a substantial right and was made on summary application in an action after judgment is rendered.

[7] We agree with Jackson that the order for an arrest and commitment warrant was an order on summary application in an action after judgment. As a general matter, an order on "'summary application in an action after judgment'" under § 25-1902 is an order ruling on a postjudgment motion in an action.[11] In *State v. Perry*,[12] we held that the trial court's amended commitment order, changing the defendant's sentence

---

[9] See *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997).

[10] See, *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997); *In re Estate of Peters*, 259 Neb. 154, 609 N.W.2d 23 (2000).

[11] *Heathman v. Kenney*, 263 Neb. 966, 969, 644 N.W.2d 558, 561 (2002).

[12] *State v. Perry*, 268 Neb. 179, 681 N.W.2d 729 (2004).

from 40 to 42 years' imprisonment to 200 months' to 42 years' imprisonment and issued upon the court's own motion 2 years after the original sentence, was made on summary application in an action after judgment was rendered. And in *Heathman v. Kenney*,[13] we held that an order denying the defendant's request for reimbursement of photocopying expenses, made after a final judgment of dismissal of the underlying writ of habeas corpus and while the defendant's appeal from the dismissal was pending, was made upon a summary application in an action after judgment.

Similarly here, the State's motion for an arrest and commitment warrant related to a prior final judgment, the June 9, 2004, sentencing order. The court's order granting the motion was a postjudgment ruling in the underlying criminal action. It was an order in an action after judgment is rendered.

But we disagree with Jackson's contention that the order for an arrest and commitment warrant affected a substantial right. Numerous factors have been set forth defining when an order affects a substantial right. Broadly, these factors relate to the importance of the right and the importance of the effect on the right by the order at issue.[14] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[15]

[8,9] Regarding the importance of the right affected, we often state that a substantial right is an essential legal right, not merely a technical right.[16] It is a right of "substance."[17] We

---

[13] *Heathman v. Kenney, supra* note 11.

[14] See John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001).

[15] See *id*. See, also, e.g., *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998); *Egan v. Bunner*, 155 Neb. 611, 52 N.W.2d 820 (1952); *Ribble v. Furmin*, 69 Neb. 38, 94 N.W. 967 (1903).

[16] See *Hernandez v. Blankenship*, 257 Neb. 235, 596 N.W.2d 292 (1999).

[17] See, *Clarke v. Nebraska Nat. Bank*, 49 Neb. 800, 803, 69 N.W. 104, 106 (1896); Lenich, *supra* note 14.

have elaborated further that an order affects a substantial right if it "affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing."[18]

Thus, in *State v. Schlund*,[19] we held that an order disqualifying the public defender did not affect a substantial right. We explained that while there is a right to effective counsel, there is no right to counsel of one's choice. Moreover, the motion to disqualify counsel affected a "peripheral matter," rather than the subject matter of the case.[20]

Likewise, we held in *In re Estate of Peters*[21] that even though an order reopening a formally closed probate estate and reappointing a personal representative required the heirs to defend distributions that were approved 2 years earlier, the order was not dispositive of the heirs' rights to those distributions. The heirs did not yet suffer a diminishment of any claim or defense as a result of the order. Therefore, the order did not affect a substantial right.

[10,11] Whether the effect of an order is substantial depends on "whether it affects with finality the rights of the parties in the subject matter."[22] This aspect of "affecting a substantial right" also depends on whether the right could otherwise be effectively vindicated.[23] An order affects a substantial right when the right would be "significantly undermined"[24] or "irrevocably lost"[25] by postponing appellate review. The duration of

---

[18] *Jarrett v. Eichler*, 244 Neb. 310, 314, 506 N.W.2d 682, 685 (1993). See, also, *State v. Schlund*, 249 Neb. 173, 542 N.W.2d 421 (1996).

[19] *State v. Schlund, supra* note 18.

[20] *Id.* at 176, 542 N.W.2d at 423.

[21] *In re Estate of Peters, supra* note 10.

[22] *Id*. at 159, 609 N.W.2d at 27.

[23] See, e.g., *In re Estate of Muncillo*, 280 Neb. 669, 789 N.W.2d 37 (2010); *State v. Vela*, 272 Neb. 287, 721 N.W.2d 631 (2006).

[24] *State v. Gibbs*, 253 Neb. 241, 245, 570 N.W.2d 326, 330 (1997).

[25] *State v. Vela, supra* note 23, 272 Neb. at 290, 721 N.W.2d at 635.

the order is relevant to whether its effect on the substantial right is substantial.[26]

Thus, *in State v. Cisneros*[27] the Nebraska Court of Appeals held that an order denying the defendant's request to withdraw his pleas of no contest did not affect a substantial right. The order clearly affected the defendant's important rights to a presumption of innocence and to a trial by jury. But the Court of Appeals reasoned that the withdrawal of the pleas, even if allowed, would not have resulted in the defendant's immediate release from custody. Therefore, the rights at issue could effectively be vindicated in an appeal after a conviction and sentence.[28]

And in *In re Interest of T.T.*,[29] the Court of Appeals held that a temporary gag order against a parent in juvenile proceedings was not a final, appealable order. The order was only intended to operate for 5 days. The court observed that the object of the order was of sufficient importance; the right of free speech is "'constitutional bedrock.'"[30] But the Court of Appeals concluded that the timeframe over which the order could reasonably be expected to operate was not sufficient to be directly appealable.[31]

In Nebraska, an arrest, with or without a judicially ordered warrant, is not immediately appealable in other contexts.[32] Even the denial of a motion to quash, based on the alleged illegality of the arrest, is not immediately appealable.[33]

---

[26] See *In re Interest of T.T.*, 18 Neb. App. 176, 779 N.W.2d 602 (2009).

[27] *State v. Cisneros*, 14 Neb. App. 112, 704 N.W.2d 550 (2005).

[28] *Id.*

[29] *In re Interest of T.T., supra* note 26.

[30] *Id.* at 184, 779 N.W.2d at 612.

[31] *In re Interest of TT., supra* note 26.

[32] See, e.g., *State v. Royer*, 276 Neb. 173, 753 N.W.2d 333 (2008); *State v. Sinsel*, 249 Neb. 369, 543 N.W.2d 457 (1996). See, also, *United States v. One Parcel of Real Property*, 767 F.2d 1495 (11th Cir. 1985).

[33] See *State v. Sinsel, supra* note 32.

Likewise, an order of commitment is not considered an appealable order in its more typical context.[34]

In other jurisdictions, attempts to appeal directly from orders for arrest or commitment are exceedingly rare. But when presented, courts in other jurisdictions likewise hold, either directly or indirectly, that such orders are not immediately appealable absent specific statutory authorization.[35] And although there are many cases considering the consequences of mistaken and erroneous release, none involve immediate appeals from orders pertaining to the act of bringing the inmate back into a department of corrections' custody.

[12] Jackson acknowledges that he is currently serving parole under the legal custody of the Department by virtue of the June 9, 2004, sentencing order. We have said, "The certified copy of the judgment of a court of record . . . constitutes the authority of the warden to retain the [prisoner]."[36] When a judgment includes a statement of the nature of the imprisonment imposed and the duration thereof, it fulfills all purposes contemplated by the relevant statute, Neb. Rev. Stat. § 29-2401 (Reissue 2008), and constitutes the authority for the Department's exercise of custody over the convicted person.[37]

In *Hawk v. O'Grady*,[38] we applied these principles to affirm the denial of habeas corpus relief for a petitioner who alleged that the district court acted in excess of its powers when it ordered federal officers to return the petitioner to the custody of Douglas County upon the completion of his federal sentence. We explained that even if the petitioner's

---

[34] See, e.g., *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001); *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994).

[35] See, *United States v. One Parcel of Real Property, supra* note 32; *State v. Royer, supra* note 32; *Nnoli v. Nnoli*, 389 Md. 315, 884 A.2d 1215 (2005).

[36] *Dunham v. O'Grady*, 137 Neb. 649, 651, 290 N.W. 723, 724 (1940).

[37] *Id.*

[38] *Hawk v. O'Grady*, 137 Neb. 639, 290 N.W. 911 (1940).

allegations were true, they would not entitle him to habeas relief. We said that despite any possible error in the directions concerning his delivery into custody, the petitioner was serving time in State custody pursuant to a valid conviction and sentence.[39]

We have also repeatedly said that "'where the judgment and sentence is imprisonment for a certain term, *and from any cause the time elapses without the imprisonment being endured*, it will still be a valid, subsisting, unexecuted judgment.'"[40] The June 9, 2004, order did not lose its presumed validity and effect simply because the Department mistakenly released Jackson, and any attack on the enforceability of the June 9 order was beyond the scope of the proceedings for an arrest and commitment warrant. The court was merely acting, through the arrest and commitment warrant, as an enforcer of its prior order.

The district court enforced the June 9, 2004, order after observing through a straightforward mathematical calculation that Jackson had not yet served the entirety of his sentence. The court was not deciding any important right or issue affecting the subject matter of the underlying criminal action or of any rights allegedly derived from the mistaken release. The court did not diminish any claim or defense that was available to Jackson prior to the order for an arrest and commitment warrant. This is distinguishable from the final order in *State v. Perry*, wherein the court had amended one of the defendant's sentences from 40 to 42 years' imprisonment to 200 months' to 42 years' imprisonment.[41]

Because the Department's continuing exercise of custody is pursuant to the June 9, 2004, order, setting aside the order for an arrest and commitment warrant would not result in

---

[39] *Id.*

[40] *Riggs v. Sutton*, 113 Neb. 556, 560, 203 N.W. 999, 1000 (1925) (emphasis supplied). See, also, *Tyler v. Houston*, 273 Neb. 100, 728 N.W.2d 549 (2007).

[41] *State v. Perry, supra* note 12.

Jackson's release from the Department's custody, even if we were to entertain Jackson's appeal and find it meritorious. And the court's order for an arrest and commitment warrant was by its nature an order of limited duration. The warrant was issued pursuant to the order, and its sole purpose was completed when Jackson was brought back into the Department's custody.

Any rights of substance that Jackson might claim stem from his mistaken release can be effectively vindicated through a petition for a writ of habeas corpus relief. This is distinguishable from the final order in *Heathman v. Kenney* denying the defendant's request for reimbursement of photocopying expenses,[42] because there was no apparent future opportunity to litigate that question. Jackson's objective is his absolute discharge from the Department's custody. Habeas is especially crafted for persons who believe they are confined without legal authority.[43]

The scope of the proceedings inherent to the consideration of a motion for an arrest and commitment warrant are necessarily more limited in comparison to an action for habeas corpus relief. This is due to both the scope of the issue presented and the need for expediency when a mistakenly released inmate is at large. We reject Jackson's apparent contention that motions for arrest and commitment warrants should be turned into ad hoc habeas actions in which both parties fully litigate the enforceability of the unserved sentencing order before a warrant to arrest can issue.

Were we to address appeals from orders for arrest and commitment warrants, our review would be limited to the questions presented to and decided by the district court,[44] as well as any inherent due process or jurisdictional questions relating to the motion. All other questions unrelated to the act of

---

[42] *Heathman v. Kenney, supra* note 11.

[43] See Neb. Rev. Stat. § 29-2801 (Reissue 2008).

[44] See *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012).

issuing an arrest and commitment warrant would have to be litigated elsewhere. To recognize an order for an arrest and commitment warrant as a final order would thus create piecemeal appeals arising out of one set of operative facts. Further, since not all mistakenly released inmates are brought back into custody through an order for an arrest and commitment warrant, recognizing such orders as final would create chaos in trial procedure.

[15] For all these reasons, we conclude that the order for an arrest and commitment warrant is not a final, appealable order. But most fundamentally, the temporary order did not affect the underlying authority of the Department's continuing exercise of custody over Jackson, and the order did not diminish any claim or defense that was available to Jackson before it was issued.

## CONCLUSION

A habeas action provides an "adequate and unimpaired opportunit[y]" to "test the validity and sufficiency" of Jackson's claims stemming from the mistaken release.[45] Until such an action succeeds in altering the June 9, 2004, sentence or its enforceability, the June 9 sentence remains the authority under which the Department currently has Jackson in custody. The district court's order for an arrest and commitment warrant was simply a temporary order of enforcement. Therefore, the order for an arrest and commitment warrant was not a final order and we have no jurisdiction over the present appeal.

APPEAL DISMISSED.

STEPHAN, J., not participating in the decision.

---

[45] *Rehn v. Bingaman*, 157 Neb. 467, 481, 59 N.W.2d 614, 621 (1953).